UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
STATE FARM FIRE & CASUALTY COMPANY
a/s/o KEVIN CURRAN AND ELIZABETH
CURRAN,

                       Plaintiff,                  **MEMORANDUM AND ORDER**
                                                                           CV 05-4817 (WDW)
        -against-

NUTONE, INC.,

                       Defendant.
-------------------------------------------------------------X
**APPEARANCES:**

**LAW OFFICES OF STUART D. MARKOWITZ, P.C.**
Attorneys for Plaintiff
575 Jericho Turnpike, Suite 210
Jericho, New York 11753

**LYNCH ROWIN LLP**
Attorneys for Defendant
630 Third Avenue
New York, New York, 10017

**WALL, Magistrate Judge:**

Before the court is the motion for summary judgment by defendant Nutone, Inc. ("Nutone"). Docket Entry ("DE") [20]. Plaintiff State Farm Fire and Casualty Company ("State Farm") has opposed the motion. For the reasons set forth herein, the defendant's motion for summary judgment is denied.

## BACKGROUND

The material facts, drawn from the Complaint and the parties' Local 56.1 Statements, are undisputed unless otherwise noted. On September 18, 2004, a fire took place at the home of Kevin and Elizabeth Curran (the "Currans") at 171 Country Village Lane in East Islip, New York

(the "subject premises"). State Farm insured the Curran home for damages and, upon payment to the Currans, was subrogated to their rights under the insurance policy. As a result of damages caused by the fire, State Farm paid out over $227,000 to the Currans or to third parties on their behalf. Plaintiff's Rule 56.1 Counter-Statement ("Pl's Cntr-Stmt") ¶2, DE [26].

State Farm contends that the fire started in a ceiling fan located in the upstairs bathroom of the subject premises and that the ceiling fan was the cause of the fire. Defendant does not offer an alternative theory for how the fire started. The parties do not dispute that the ceiling fan at the subject premises at the time of the fire was a Nutone Model 668 N Fan/Light combination. The crucial fact in dispute is whether the Nutone ceiling fan was defectively manufactured or whether it was modified after it left Nutone.

Nutone states that the ceiling fan was manufactured during the 1980s at its Cincinnati, Ohio plant. Def's Rule 56.1 Statement ("Def's Stmt") ¶10, DE [27]. The fan as manufactured contained three principal sub-assemblies–a fan motor, a fan power pack, and a light. *Id.* ¶11. The sub-assembly at issue in this litigation is the fan motor. The fan motor was not manufactured by Nutone itself, but rather by one of its suppliers, Jakel Company. *Id.* ¶12; Pl's Cntr-Stmt ¶12. According to Nutone, it required that the fan motor contain a safety device known as a thermal cutoff (hereinafter "TCO") that acted to cut electrical power to the fan if the temperature exceeded a certain limit. Def's Stmt ¶¶14-15. The TCO function could only be activated once, after which the entire fan motor would have to be replaced. *Id.* ¶¶16-17. Nutone claims that the TCO by itself was not manufactured as a replacement part. *Id.* ¶19. Nutone argues that at some point in time after the fan was manufactured but prior to the Currans' purchase of the home, the TCO was activated and performed properly by shutting down the fan.

2

*Id.* ¶20. Subsequently, "someone replaced the fan's thermal protector with a copper wire connecting the fan motor to the subject premises' power supply which reactivated the fan." *Id.* ¶21. Although this "improper repair" allowed the fan to rotate and appear to perform normally, the TCO safety feature was no longer present and thus the fan would not shut down properly in the event of overheating. *Id.* ¶23. Nutone claims that even if the fire started in the ceiling fan, it cannot be held liable because the fan was modified after it left Nutone's possession and control.

      Plaintiff suggests that there is a question as to whether this particular unit ever contained a properly functioning TCO device. Pl's Cntr-Stmt ¶¶15-19. Plaintiff further disputes defendant's claim that the TCO device was activated at some point and then improperly repaired. The Currans purchased the subject premises on July 9, 1999. *Id.* ¶4. The ceiling fan was installed prior to the Currans' ownership. Plaintiff provides affidavits from the previous homeowners stating that they never had any problems with the ceiling fan and never had electrical work performed on it. The Currans purchased the subject premises from its previous owner, Michael Mirrer, who owned the property from October 28, 1994 to July 9, 1999. *Id.* ¶5. Mr. Mirrer claims that the ceiling fan was already installed when he took ownership in 1994, and that to his knowledge, there were never problems with the fan during his ownership. Mirrer Aff. ¶¶4, 5, DE [43]. Between August 1985 and October 1994, the subject premises was owned by Robert and Cathy Mahoney. Pl's Cntr-Stmt ¶5. The Mahoneys are uncertain as to whether the ceiling fan was installed prior to their purchase of the property or whether they had it installed by a licensed electrician in the early 1990s. C. Mahoney Aff. ¶2, DE [44]; R. Mahoney Aff. ¶2, DE [45]. They also state that they never experienced any problems with the fan, nor did they repair or modify the fan. C. Mahoney Aff. ¶¶3, 4; R. Mahoney Aff. ¶¶3, 4.

3

## DISCUSSION

### A. Summary Judgment Standards

"'Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law.'" *Jamaica Ash & Rubbish Removal Co. v. Ferguson,* 85 F. Supp. 2d 174, 180 (E.D.N.Y. 2000) (quoting *In re Blackwood Assocs., L.P.* 153 F.3d 61, 67 (2d Cir. 1998) and citing Fed. R. Civ. P. 56(c) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford,* 361 F.3d 113, 122 (2d Cir. 2004). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *See Holt v. KMI-Continental, Inc.,* 95 F.3d 123, 128 (2d Cir. 1996). The applicable substantive law determines which facts are critical and which are irrelevant. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

The trial court's responsibility is "'limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution.'" *B.F. Goodrich v. Betkoski,* 99 F.3d 505, 522 (2d Cir. 1996) (quoting *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1224 (2d Cir. 1994)). When, however, there is nothing more than a "metaphysical doubt as to the material facts," summary judgment is proper. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Rather, there must exist 'specific facts showing that there is a genuine

issue for trial' in order to deny summary judgment as to a particular claim." *Jamaica Ash & Rubbish,* 85 F. Supp. 2d at 180 (quoting *Celotex,* 477 U.S. at 322).

A central issue is whether or not this ceiling fan was manufactured to include a TCO. The case presents two conflicting scenarios: the fan was manufactured with the TCO and the TCO was removed by someone subsequent to that manufacture, or the TCO was never installed in this particular unit. Defendant claims, based only on the design specifications, that a TCO was properly installed as part of the unit, and that it must have been removed after it left defendant's control. Plaintiff's evidence for the latter scenario consists of affidavits from both the homeowners at the time of the fire and the previous homeowners stating that the fan had not been modified, as well as an affidavit and report from plaintiff's expert finding no evidence that a TCO was ever installed in this unit. Defendant has attacked the affidavit of Joseph Cristino, plaintiff's expert, as conclusory and insufficient to create an issue of fact to defeat this summary judgment motion.

In deciding a motion for summary judgment, the court may consider only admissible evidence. *See Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 164 F.3d 736, 746 (2d Cir. 1998). Specifically, "[i]t is appropriate for a district court to decide questions regarding the admissibility of evidence, including expert opinion evidence, on a motion for summary judgment." *Cacciola v. Selco Balers, Inc.,* 127 F. Supp. 2d 175, 180 (E.D.N.Y. 2001). If the court decides to exclude expert testimony, a decision on summary judgment is made on the remainder of the record. *See Raskin v. Wyatt Co.,* 125 F. 3d 55, 66 (2d Cir. 1997). Although defendant has not explicitly moved to exclude the plaintiff's expert's evidence, it has argued that Cristino has no "professional expertise with ceiling fans" and that his opinion is "the sort of

partisan, unsubstantiated generalization[s] that [is] neither helpful nor reliable to a trier of fact and may be ignored on a motion for summary judgment." Def. Reply Mem., p. 11, DE [29].

The court finds, however, that it need not make a determination at this time as to whether Cristino's affidavit and report are admissible as expert testimony. First, the issue has been raised only in defendant's reply papers and plaintiff has not had the opportunity to present its arguments in favoring admission of Cristino's report as expert testimony. Thus, the court finds that the issue is not properly before the court on the current record.

Second, and more importantly for this motion, the court finds that Cristino could, at the very least, be viewed as a lay witness under Rule 701 of the Federal Rules of Evidence and his affidavit considered on that basis. Defendant does not dispute Cristino's observations regarding the absence of a TCO in the fan, but rather claim that Cristino is not qualified to come to the conclusion that a TCO was never installed. In other words, Cristino can, at the very least, testify that the TCO was not there when he inspected the unit even if he cannot testify to any conclusion based on this fact. *See, e.g., Faryniarz v. Nike, Inc.,* 2002 WL 1968351, at *3 (S.D.N.Y. Aug. 23, 2002)(in products liability action against shoe manufacturer, noting that proposed expert could testify as a lay witness as to facts and his observations, but not as to any conclusions based on these facts). The court finds that Cristino's affidavit regarding the absence of a TCO in the fan, coupled with the affidavits of the current and prior homeowners that they never had a problem with the fan and never modified it, is sufficient to raise an issue of material fact for the purpose of defeating defendant's motion for summary judgment.[1]

---

[1]Defendant notes that given the facts, "it is not difficult to deduce that the fan was modified when the electrical wiring in the bathroom was being changed." Def's Reply Mem., p. 9. Be that as it may, it is the province of a jury, not the court, to make that deductive leap.

**CONCLUSION**

In sum, the court finds that genuine issues of material fact exist precluding entry of summary judgment with respect to plaintiff's claims. Accordingly, defendant's motion for summary judgment is denied. A telephone conference to set a trial date has been scheduled for **October 17, 2008 at 11:30 a.m.** Plaintiff's counsel shall initiate the call and have all parties on the line before connecting to the court at (631)712-5720.

Dated:  Central Islip, New York **SO ORDERED:**
        September 30, 2008

 /s/William D. Wall
WILLIAM D. WALL
United States Magistrate Judge